# 23-7251-cv

## United States Court of Appeals

*for the*

## Second Circuit

JUAN CATALA, DBA Majic Entertainment LLC,
DBA Adrawn Music Publishing,

*Plaintiff-Appellant,*

– v. –

JOOMBAS CO. LTD., JOOMBAS MUSIC INT'L, JOOMBAS LLC, JOOMBAS
MUSIC GROUP, HYUK SHIN, THE LA REID MUSIC PUBLISHING
COMPANY LLC, SONY/ATV SONGS LLC, EMI APRIL MUSIC INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES JOOMBAS CO.
## LTD., JOOMBAS MUSIC INT'L, JOOMBAS LLC,
## JOOMBAS MUSIC GROUP AND HYUK SHIN

WILLIAM I. HOCHBERG
RAINES FELDMAN LITTRELL LLP
1900 Avenue of the Stars,
   Suite 1900
Los Angeles, California 90067
(310) 440-4100

REBECCA AVRUTIN FOLEY
RAINES FELDMAN LITTRELL LLP
1350 Avenue of the Americas, 22nd Floor
New York, New York 10019
(917) 790-7100

*Attorneys for Defendants-Appellees Joombas Co. Ltd., Joombas Music Int'l,
Joombas LLC, Joombas Music Group and Hyuk Shin*

 (800) 4-APPEAL • (327955)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, all Defendants-Appellees confirm that no publicly held corporation owns 10% or more of stock in any of them. Defendant-Appellee Joombas Co., Ltd. is a private entity that has a parent company called 153 Entertainment Group, LLC, which is also a private entity that does not have 10% or more of its stock owned by any publicly held corporation.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................iii

I.   COUNTERSTATEMENT OF THE CASE ..................................... 1

    a.   Nature of the Case .................................................... 1

    b.   Background................................................................ 2

        i.    Contract 1 ................................................. 2

        ii.   Contract 2 ................................................. 5

        iii.  Contract 3 ................................................. 6

        iv.   Majic's Receipt of Payment Under the Contracts ........ 7

        v.    2018 Settlement Agreement........................... 8

    c.   Procedural History ................................................. 10

II.  SUMMARY OF ARGUMENT ................................................ 15

III. ARGUMENT......................................................................... 19

    A.   The District Court properly granted Appellees'
        motion to dismiss all of Majic's claims except for one
        breach of contract claim, limited to a 15-month time
        period prior to 2014 .............................................. 19

        i.    Standard of Review..................................... 19

        ii.   The District Court correctly limited Majic's
            breach of contract claim to a 15-month window
            ending in 2014............................................ 20

    B.   The District Court properly granted Shin's Motion for
        Summary Judgment, dismissing Majic's remaining
        claim for breach of contract against him ........................ 24

        i.    Standard of Review..................................... 25

i

       ii.     The District Court followed proper procedure in analyzing both Majic's and Shin's crossing MSJs ................................................................. 27

       iii.    Majic has not, and cannot, show that the District Court's order granting Shin's MSJ should be reversed on substantive ground ................. 32

             1.    Majic still has not presented a genuine issue of material fact as to whether the Joombas entities were Shin's "Affiliates" ........... 33

             2.    Majic still fails to raise an issue of material fact regarding Shin's alleged minimization of his percentage interests in Compositions .................................... 36

             3.    The District Court properly determined that Majic failed to show Shin breached Section 9(b) or Section 14(c) of Contract 1 .......... 38

                  a.    Alleged breaches of Section 9(b) ............... 39

                  b.    Section 14(c) .............................................. 43

   C.    Majic waived opportunities to amend the Complaint and should not receive yet another opportunity at this late stage ........................................................ 44

IV.   CONCLUSION ................................................................. 50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (2017) ........................................................................ 25, 35

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................ 19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................... *passim*

*Dister v. Cont'l Grp., Inc.*,
859 F.2d 1108 (2d Cir. 1988) ............................................................. 25

*Farid v. Smith*,
850 F.2d 917 (2d Cir. 1988) ............................................................... 26

*Fujitsu Ltd. v. Federal Exp. Corp.*,
247 F.3d 423 (2d Cir. 2001) ........................................... 26, 28, 31, 34

*Gallo v. Prudential Residential Servs. Ltd. P'ship*,
22 F.3d 1219 (2d Cir. 1994) ............................................................... 25

*Grace v. Rosenstock*,
228 F.3d 40 (2d Cir. 2000) ................................................................. 46

*I.M. v. United States*,
362 F. Supp. 3d 161 (S.D.N.Y. 2019) ................................................. 27

*Jasper v. Bovina Music, Inc.*,
314 F.3d 42 (2d Cir. 2002) ................................................................... 3

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
496 F.3d 229 (2d Cir. 2007) ............................................................... 19

*Lombard v. Booz–Allen & Hamilton, Inc.*,
280 F.3d 209 (2d Cir. 2002) ............................................................... 25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........................................................................... 26

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
875 F.3d 107 (2d Cir. 2017) .......................................................... 25, 26

iii

*Palmieri v. Lynch*,
    392 F.3d 73 (2d Cir. 2004) .................................................................. 43

*Porat v. Lincoln Towers Community Association*,
    464 F.3d 274 (2d Cir. 2006) ............................................................... 45

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
    507 F.3d 117 (2d Cir. 2007) ............................................................... 19

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997) .................................................................. 27

*Scott v. Harris*,
    550 U.S. 372 (2007) ............................................................................ 26

*Simsbury-Avon Preservation Club, Inc. v.*
    *Metacon Gun Club, Inc.*,
    575 F.3d 199 (2d Cir. 2009) ........................................................ 26, 28

*State Farm Ins. Co. v. Kop-Coat, Inc.*,
    183 Fed. Appx. 36 (2d Cir. 2006) ................................................ 45, 46

*Triodetic Inc. v. Statue of Liberty IV, LLC*,
    582 Fed. Appx. 39 (2d Cir. 2014) ....................................................... 43

*United States v. Broad. Music, Inc.*,
    720 Fed. Appx. 14 (2d Cir. 2017) ......................................................... 4

*Weissmann v. Freeman*,
    868 F.2d 1313 (2d Cir. 1989) .............................................................. 23

*Wright v. Coughlin*,
    132 F.3d 133 (2d Cir.1998) ................................................................. 35

## Statutes & Other Authorities:

Fed. R. Civ. P. 12(b)(6) ........................................................................ 16

Fed. R. Civ. P. 56(c) ............................................................................. 31

Melville B. Nimmer & David Nimmer, 6 *Nimmer on Copyright*
    § 30.02(F) (2001).............................................................................. 3

iv

*Music Publishing Basics: An Overview*,
  https://www.bmi.com/news/entry/
  Music_Publishing_Basics_An_Overview .................................................. 4

N.Y. C.P.L.R. § 213(2) ............................................................................. 17

## I.  COUNTERSTATEMENT OF THE CASE

### a. Nature of the Case

This case pares down to a single breach of contract claim, an alleged breach of the "delivery" requirement of a contract between a K-pop songwriter and a middleman acting as a conduit to a music publisher. The District Court carefully and thoughtfully ruled that the appellant failed to show a single cognizable breach of any delivery obligation.  The appellant even admitted during his deposition that Shin delivered all songs he was required to deliver, when faced with evidence, including royalty statements sent to him from the music publisher showing such delivery.  Nonetheless, Appellant insists he is owed more money, claiming that Appellee Hyuk Shin "steals [songs] from me"[1] and is a criminal.[2]  Realizing that his breach of contract claim is meritless, as it only alleges failure of delivery, appellant now seeks leave to amend his Complaint almost six years after its filing to fabricate some new breach

---

[1] *See* A-782:21–783:17 (Catala Dep.).

[2] Ironically, Appellant Catala, by his admission, is a convicted felon. (A-783:14-17 (Catala Dep.).)  No evidence in this case suggests that Appellee Shin has ever been charged, much less convicted, of any crime.

theory, but he waived several opportunities to amend his Complaint and has not presented any colorable new claim.

### b. Background

#### i. Contract 1

Hyuk Shin ("Shin" or "Appellee") is a musician, composer, and executive producer. (A-298–299 (Transcript of the deposition of Hyuk Shin taken on January 24, 2022 (the "Shin Dep.").)

The defendants-appellees identified as Joombas Co. Ltd, Joombas Music Int'l, Joombas LLC, and Joombas Music Group (collectively, "Joombas") have operated as music business entities. Shin and Joombas are sometimes referred to herein collectively as "Appellees."

Juan Catala a/k/a "Majic" ("Catala," "Majic," or "Appellant") is a purported[3] music publisher, manager of DJs,[4] and entrepreneur who owned and was the sole employee of Majic Entertainment LLC, which is now defunct. (A-709–712, A-847 (Transcript of the deposition of Juan Catala taken on January 17, 2022 (the "Catala Dep.").)

On April 1, 2009, Majic entered into a music publishing contract with Shin and non-party Sean Hamilton ("Contract 1"). Contract 1 provides that Shin was to "Deliver" compositions to the office of Sony. (Contract 1, §12(c), A-41.) And, as part of that "Delivery" process, to transfer fifty percent (50%) of his copyright interest in compositions

---

[3] "Purported" because Majic admits that he (1) had never worked as a music publisher prior to signing Shin to Contract 1 (A-713:25-714:3 (Catala Dep.)); (2) does not sell or license any songs (A-714:7-19 (Catala Dep.)), which is the primary function of a music publisher; and (3) demonstrates ignorance about the business of music publishing, including lack of understanding of basic music licensing terms such as "public performance income," (A-886:2–887:15 (Catala Dep.)) and "compulsory mechanical licenses." (A-682:16–18 (Catala Dep.).) For a summary of such terms, *see Jasper v. Bovina Music, Inc.,* 314 F.3d 42, 45 n. 1 (2d Cir. 2002) (citing Melville B. Nimmer & David Nimmer, 6 *Nimmer on Copyright* § 30.02(F), at 30-102 (2001)). Instead, Majic acts as a middleman between songwriters and actual music publishers. (A-714:20–715:20 (Catala Dep.).)

[4] (A-712:10-16 (Catala Dep.).)

written, in whole or in part, or acquired, by him or his music publishing "affiliate."[5]  (Contract 1, §5(a), A-38.)

Contract 1 sets out the structure for royalty payments among Majic, Shin, and Sony.[6]  It contemplates Majic's receipt of royalties from Sony pursuant to (what would become) Contract 2 (hereinafter defined), and provides that "[f]rom all royalties actually received by Publisher from Reid under [Contract 2] from the exploitation of Compositions throughout the world ..., Publisher shall," after making certain deductions, "pay to you an amount equal to fifty percent (50%) of the balance remaining, and the remaining fifty percent (50%) thereof shall be retained by Publisher for its sole use and benefit.  (*Id.* at § 6(a), A-39.) Majic similarly agrees to pay Shin fifty percent (50%) of royalties and

---

[5] The term "affiliate" is a term of art in the music publishing business referring often to a d/b/a established by a songwriter to collect the so-called "publisher's share" of income, as opposed to the "writer's share" of income, where the division of income is typically 50-50 as between the "publisher's share" and "writer's share" thereof.  *See United States v. Broad. Music, Inc.*, 720 F. App'x 14, 15 (2d Cir. 2017); *see also Music Publishing Basics: An Overview*,
https://www.bmi.com/news/entry/Music_Publishing_Basics_An_Overview.

[6] The LA Reid Music Publishing Company LLC ("Reid"), EMI April Music Inc. ("EMI"), and Sony/ATV Songs LLC ("Sony/ATV") are collectively referred to herein as "Sony".

advances received from Sony pursuant to Contract 2 after making certain deductions.  (*Id*. at § 6(b), A-39.)

### ii. Contract 2

On May 1, 2009, Majic entered into an agreement ("Contract 2") with Sony, pursuant to which he assigned the same 50% interest that he obtained from Shin in Contract 1 to Sony.[7]  (Contract 2, §5(a), A-54.)  The other provisions in Contract 2 that are relevant to this Appeal are as follows.  Reid and EMI are identified as "Publisher," Majic as "You," and Shin and Hamilton each as a "Writer."  (Contract 2, p. 1, A-52.)  Shin and Hamilton are not parties to Contract 2 but signed a so-called "writer's inducement," affirming their obligations under Contract 2.  (Contract 2, Writer's Inducement, A-66.)  Like Contract 1, Contract 2 is an exclusive co-publishing and administration agreement.  (Contract 2, p. 1, A-52.)

Contract 2 states that, during the term thereof, Majic "shall cause Writer to Deliver to Publisher, for exclusive exploitation, all Compositions," and that "Publisher will be the exclusive administrator

---

[7] Notably, while Contract 2 contains a grant of 50% of Shin's entire copyright interests in the subject compositions to Sony via Majic, it does not contain, nor has Majic provided evidence of, a formal assignment of the remaining half of Shin's copyright interest to Majic through Contract 1 or otherwise.

and co-publisher of Your Interest in all Compositions." (Contract 2, p. 1, A-52.) However, Contract 2 also states that "You [Majic] shall Deliver to Publisher [Sony] each Composition." (Contract, § 3(a), A-53.) Pursuant to Contract 2, Majic agrees to "sell, grant, transfer and assign to [Reid and EMI]… an undivided 50% interest in all of [Majic's] Interest in the Compositions, including, without limitation, the copyrights therein…." (Contract, § 5(a), A-54.)

### iii. Contract 3

On January 1, 2014, nearly five years after Contracts 1 and 2 were executed, and after Shin alleged "Majic ... failed to make required royalty payments to [Shin and Hamilton] under [Contract 1]," (*see* Contract 3 (hereinafter defined) § 1(d)), the Parties to Contract 2, Shin, and Hamilton signed a settlement agreement ("Contract 3"), to address various claims and modify provisions of Contract 2, including payment and Delivery obligations, such that going forward payments from Sony would be made directly to Shin and Hamilton, rather than through Majic. (Contract 3, §§ 1(e), 5-6, A-73-75.)

Additionally, and critically, Contract 3 changed the Delivery obligation under Contracts 1 and 2, requiring Shin and Hamilton to

deliver Compositions directly to Sony, bypassing Majic, who nonetheless remained jointly and severally liable with Shin and Hamilton for any breach of the delivery requirement.  (Contract 3, § 2, A-73.)

Contract 3 also changed the distribution of royalty payments such that, "the royalties otherwise accruing to Majic's credit under [Contract 2] shall be divided among Majic's, Shin's, and Hamilton's royalty accounts."  (Contract 3, § 6, A-75.)  Likewise, "[a]ny future [a]dvances payable under [Contract 2]" would be paid out separately and "charged to their respective royalty accounts."  (Contract 3, §5(b), A-74.)

As the District Court noted, "the apparent purpose of Contract 3 is to excise Majic from the composition delivery process."  (SPA-19.)  It also excised Majic from the process of paying the songwriters.  (*See* Contract 3, §3, A-73.)

### iv.  Majic's Receipt of Payment Under the Contracts

Uncontested evidence establishes that Majic has regularly received payments and statements from Sony with respect to the Compositions. Specifically, the District Court found that "[b]etween June 3, 2009 and May 2, 2022, Sony paid Majic $503,039.82 in advances, royalties, and other unspecified credit card balance and cash payments" and "Plaintiff

acknowledge[d] that Majic ha[d] received approximately $225,000 in royalties for 'musical compositions that Sony administers on behalf of Plaintiff in the contractual relationship between all parties identified in Contract l.'"[8] (SPA-64; *see also* A-753:6–754:4; A-797:5–25, A-801-12–15 (Catala Dep.) (acknowledging receipt of royalties).)

Majic nonetheless contends he is entitled to larger sums than what he is currently receiving from Sony based on groundless theories and his misinterpretation of documents.

### v. 2018 Settlement Agreement

On June 1, 2018, Sony, Shin, and Joombas Co., Ltd. entered into a Settlement Agreement (the "2018 Settlement Agreement") (A-178–187), which resolved all potential disputes relating to Shin's alleged failure to deliver certain musical compositions to Sony (which Shin denies) and released the parties from any potential claims relating to Contracts 2

---

[8] Majic also admits that he misread a publishing statement attached as Exhibit E to his Complaint – which he tellingly does not include in the Appendix  –  in that he mistakenly alleged as evidence of unreceived receipts of US $892,301, when in fact it was ₩ 892,301 (South Korean Won) indicated on the statement, which sum converted to a grand total of US $444.78 at the time of the deposition.  (A-789:12–A-791:8 (Catala Dep.).)

and 3. (2018 Settlement Agreement, §§ 2, 5.1-5.2, A-179 and 181.) Majic chose not to sign onto the 2018 Settlement Agreement. (*See* A-178-187.)

Significantly, through the 2018 Settlement Agreement, Shin also bought out the remaining term of Contract 2, enabling him to move on and enter into contracts with other publishers. (2018 Settlement Agreement, § 4, A-179–180.) Moreover, the parties agreed that "[s]olely as between [them], [Contract 2] shall terminate effective as of the date of execution of [the 2018 Settlement Agreement]," and Contract 3 "shall terminate concurrently with the termination of [Contract 2]." (2018 Settlement Agreement, § 4.1, A-179.)

The 2018 Settlement Agreement "specifically exclud[ed] from the said settlement any claims that may belong to or be separately capable of being asserted by Majic under the terms of [Contracts 1, 2, and 3]." (2018 Settlement Agreement, p. 1, A-178; *see also* § 1, A-179 (the 2018 Settlement Agreement "specifically exclud[es] ... Majic as to whom this Settlement Agreement is not binding").) And, although the 2018 Settlement Agreement terminates Contracts 2 and 3 as between Sony and Shin, "[n]otwithstanding anything to the contrary contained in [Contracts l, 2, and 3] ... the termination of [Contracts 2 and 3] shall not

9

effect a termination of [Contract 1] insofar as it pertains to the rights of Majic thereunder and Majic shall retain any and all rights and claims under [Contract l] as if [Contracts 2 and 3] had not been terminated." (2018 Settlement Agreement, §4.1, A-179-180.)

Thus, and as previously noted, Sony has continued to account and pay to Majic a share of income from Shin's Compositions pursuant to Contracts 1, 2, and 3. Nevertheless, Catala claims he's been neither accounted to nor paid with regard to some 150 songs, which, notably, he has repeatedly failed to identify on the record. (A-910:11–917:8 (Catala Dep.).)

### c. Procedural History

Catala commenced this action by filing a complaint in the United States District Court for the Southern District of New York (A-25) on September 14, 2018, about three and a half months after Shin, Joombas Co., Ltd., and Sony entered into the 2018 Settlement Agreement. (A-177.) Majic alleged that Shin failed to deliver to Majic Compositions he had written and/or acquired, and thus had breached Contracts 1, 2, and 3, and violated the Copyright Act. (A-29-30, ¶¶ 35-52; A-34, ¶¶ 95-103.) The Complaint also asserted fraud and tortious interference with

10

contract claims against Joombas, in connection with alleged existence of compositions not delivered to Majic.[9]  (A-32-33, ¶¶ 75-89; A-35, ¶¶ 104-112.)  Majic also sought an accounting from Shin (A-33-34, ¶¶ 90-94), and a permanent injunction against Shin and Joombas.  (A-35-36, ¶¶ 113-116.)

The Complaint further alleged that Sony breached Contracts 2 and 3 by "failing to demand that Shin provide ... compositions to Majic and [Sony]," (A-31, ¶ 56) and by settling with Shin without including Majic in the settlement. (A-31, ¶¶ 53-65.)  The Complaint also asserts a breach of fiduciary duty claim against Sony.  (A-32, ¶¶ 66-74.)

On November 26, 2018, Shin and Joombas moved to dismiss the Complaint.  (*See* A-98-115.)  The Reid Defendants moved to dismiss the Complaint on February 7, 2019.  (*See* A-149-176.)   In a decision and order filed on September 23, 2019, the District Court granted in full the

---

[9] The District Court's granting of the MTD resulted in the dismissal of all claims against all defendants, except a single breach of contract claim against Shin.  The dismissed claims included: fraud and violation of the US Copyright Act against Shin; breach of contract and breach of fiduciary duty against Sony; and fraud and tortious interference with contractual relations against the Joombas entities.  (*See* SPA-1 – SPA-30.)  The only portion of this Order Majic appealed (with respect to Shin) are the limitations the District Court put on Majic's breach of contract claims.  (*See* Opening Br. p. 1-2.)

motions to dismiss submitted by Joombas and Sony and granted in part and denied in part Shin's motion to dismiss. (SPA-1-30.) As a result, only the breach of contract claim against Shin regarding Contract 1 survived, and only as to a limited time-period, as further explained below. (*See id.*)

As to Contracts 2 and 3, the District Court dismissed Majic's claims finding that "none of th[e] 'terms, covenants, and conditions' [in Contract 2] obligate Shin to deliver compositions to Majic," and "Contract 3 likewise does not impose an obligation on Shin to deliver compositions to Majic." (SPA-19.)

Regarding Contract 1, the District Court found that "Contract 3 expressly modifies the delivery obligations set out in Contract 2, and – because Contract 1 'shall be deemed amended in all respects necessary to conform to the provisions of [Contract 2]' Contract 3 also modifies Contract 1's delivery obligations." (SPA-16.) Thus, the District Court concluded that, "[a]fter execution of Contract 3, Shin no longer was required to deliver compositions to Majic; his obligation was to deliver the compositions to Reid." (SPA-16.) Accordingly, "to the extent that Majic's claim for breach of Contract 1 concerns conduct that took place

12

after Contract 3 was executed in January 2014, Shin's motion to dismiss [Catala]'s breach claim will be granted." (SPA-16.)

As a result of the District Court's September 23, 2019 order on the motions to dismiss, the only surviving claim in the Complaint was for breach of Contract 1 against Shin, and, further, only as to conduct that took place prior to the execution of Contract 3 on January 1, 2014.

In dismissing Majic's tortious interference with contract claim against Joombas, the District Court concluded that "Plaintiff has not alleged facts sufficient to show that [the Joombas Defendants] procured Shin's breach." (SPA-25.) And, in dismissing Majic's fraud claim against Joombas and Shin, the District Court found that the Complaint's allegations "do not demonstrate a 'legal duty separate from' Shin's obligations under Contracts 1, 2, and 3, nor do they make out 'a fraudulent misrepresentation [that is] collateral or extraneous to' these contracts." (SPA-27.) The District Court further concluded that the Complaint failed to adequately plead facts that make out the elements of fraud. (SPA-27.)

The District Court also dismissed Majic's Copyright Act claim against Shin, finding that Majic "does not identify what provision or

13

provisions of the Copyright Act Shin allegedly violated," and "does not explain how the Copyright Act addresses the conduct about which Plaintiff complains." (SPA-28.)

On October 7, 2019, Majic moved for reconsideration of the September 23, 2019 order. (A-203-230.) The District Court denied Plaintiff's motion on March 31, 2021. (SPA-31-49.)

On April 30, 2022, Majic moved for summary judgment on his surviving breach of contract claim (A-964-988), and on May 2, 2022, Shin cross-moved for summary judgment on that claim. (A-989-1016.) On September 20, 2023, the District Court denied Majic's motion and granted Shin's motion, disposing of the entire case as to all parties. (SPA-50-85.)

On September 29, 2023, Majic filed a Notice of Appeal. (A-1091-1092.)[10]

---

[10] As discussed *infra* at Section III(C), Majic also purported to seek leave to move to amend the Complaint numerous times, though his attempts to do so were procedurally incorrect. Nevertheless, the District Court considered his arguments and permitted him to make a formal motion for leave to amend, but he never did.

14

## II.   SUMMARY OF ARGUMENT

Appellee Hyuk Shin is a K-Pop songwriter who signed a contract early in his career with Majic, a purported[11] music publisher who acted as a middleman between Shin and an actual music publisher (Sony).

This case boils down to a single breach of contract claim, an alleged breach of the delivery requirement ("Delivery")[12] under a music publishing contract.  The District Court carefully and thoughtfully ruled that the scope of any cognizable breach of that Delivery requirement was limited to at most 16 songs and that Majic failed to state a claim with respect thereto.  (*See* SPA-74 *(*quoting A-1008-1010, Shin's Br. in support of MSJ).)

Majic admits these 16 songs were Delivered.  (*See* A-731:7-12 (Catala Dep.).)  Moreover, Sony, pursuant to a subpoena, produced royalty statements showing that all 16 songs were not only Delivered but that Majic received royalty statements pertaining thereto.  (District Court Dkt. 166-3, pp 1-14.)  Majic has failed to present evidence of one

---

[11]  *See* footnote 1.

[12]  The definition of "Delivery" is substantially the same in Contract 1 (A-41, §12(c)) and Contract 2 (A-62, §11(b)), both of which require delivery to the offices of Sony/EMI in New York City.

song that was not Delivered during the relevant time period, or to raise a genuine issue of material fact as to any alleged non-Deliveries of any songs at any time.

Nonetheless, Majic importunes that he is entitled to more money than he has received (and continues to receive) from Sony. Despite evidence from Sony that Majic has regularly received royalties due (*See* Sony Subpoena Response, District Court Dkt. 166-3, pp 1-14.), Majic relentlessly insists that somewhere "out there" are 150 or more musical compositions that Shin failed to Deliver, but he simply cannot identify them. (*See* A-911:1-6 (Catala Dep.).) Even if there were grounds for such specious claims, which there are not, pursuant to Contracts 2 and 3, it is Sony, not Majic, which has a right to receive and administer Delivery of Compositions from Shin. And, any dispute Sony and Shin may have had relating to Delivery was resolved pursuant to the 2018 Settlement Agreement, which Majic refused to sign. (*See* A-177–187.)

The District Court's granting of Appellees' Rule 12(b)(6) motion to dismiss ("MTD") (SPA-1–30) together with Shin's subsequent motion for summary judgment ("MSJ")(SPA-50–84) disposed of Majic's claims

entirely.[13]  Yet Majic baselessly rejects the District Court's thoughtful rulings, bitterly insists he is "the sole reason" for Shin's success as a songwriter, (A-846:25–847:10 (Catala Dep.)), and belligerently charges that Shin "steals [songs] from me" and is a criminal.[14]

In summary, the District Court correctly ruled that Majic's allegations of Shin's breach of contract only relate to his Delivery obligation and Shin's Delivery obligation to Majic ceased on January 1, 2014.[15]  The District Court permitted Majic numerous opportunities to move for leave to amend the Complaint, but he did not, effectively conceding that this case can never be about anything more than Shin's Delivery obligation.  Finally, the District Court found that there is no

---

[13] Notably, with respect to Shin, Majic only appeals the MTD Order to the extent it limited or dismissed his sole surviving claim for breach of contract, and the MSJ Order only to the extent it granted Shin's MSJ, but not the denial of Majic's MSJ.  Majic does not appeal the dismissal of his causes of action for fraud, tortious interference and copyright infringement against Shin and Joombas.  Nor does Majic request review of his purported causes of action for the remedies of accounting and permanent injunction.  (A-32-36, ¶¶ 75-116.)

[14] A-782:21–783:17 (Catala Dep).  and *See* footnote 2.

[15] Moreover, the time period was limited to a 15-month duration from September 14, 2012 to December 31, 2013 per the applicable statute of limitation.  (*See* SPA-73, fn. 13 (citing N.Y. C.P.L.R. § 213(2)) ("[A]n action upon a contractual obligation or liability, express or implied … must be commenced within six years").)

17

material issue of fact with respect to whether Shin breached his Delivery obligation, as Majic's only support for his argument was based on his own speculation or opinion, which will never be sufficient to create a material issue of fact.

This Appeal presents one primary question: whether Majic has presented a triable issue as to whether Shin breached a "Delivery" obligation to Majic under Contracts 1-3. As further explained herein, the answer is no, because Majic has failed to present evidence to raise any genuine issue of material fact with respect to whether Shin breached the Delivery obligation to him.

Finally, Majic desperately seeks to amend his Complaint to add some other legal theory besides his failed breach of contract claim premised on Shin's alleged failure to comply with his Delivery obligations. (*See* Compl., A-29, ¶37-38.) As discussed below, however, Majic waived multiple opportunities to amend and should not be allowed to amend now, especially as he lacks grounds for doing so.

Thus, this Court is respectfully requested to affirm the well-reasoned rulings of the District Court on the MTD and MSJ.

## III. ARGUMENT

### A. The District Court properly granted Appellees' motion to dismiss all of Majic's claims except for one breach of contract claim, limited to a 15-month time period prior to 2014.

#### i. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "In considering a motion to dismiss ... the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen, Inc.,* 496 F.3d 229, 237 (2d Cir. 2007) (citation omitted). However, allegations that "are no more than conclusions [] are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. A pleading is conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" *id.*, at 678, offers "'a formulaic recitation of the elements of a cause of action,'" *id.* (citations omitted), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).

### ii.   The District Court correctly limited Majic's breach of contract claim to a 15-month window ending in 2014.

The District Court properly limited Majic's breach of contract claim to conduct during a 15-month period prior to 2014, because the only contractual obligation at issue here is "Delivery," as defined in the contracts.  (Contract 1, § 12(c) (A-41–42); Contract 2, § 11(b) (A-62); Contract 3, §2 (A-73).)  To the extent there ever existed an obligation for Shin to deliver any Composition to Majic, that obligation was extinguished when the parties entered into Contract 3 on January 1, 2014.  Thereafter, Sony, not Majic, was to accept Delivery of Appellees' Compositions.  Sony settled any issues it may have had with Shin over the Delivery requirement, allowing Shin to buy out all future obligations to Sony.  (2018 Settlement Agreement, § 4, A-179–180.)  The 2018 Settlement Agreement obviously did not apply to Majic, a non-signatory thereto, but it also did not create any new obligations of Shin to Majic.

The District Court properly determined, pursuant to the contract language explained above, that to the extent Shin was ever actually required to deliver anything to Majic under Contracts 1 or 2, Contract 3 extinguished that obligation after January 1, 2014.  Thus, if there were

20

a breach of the Delivery requirement after January 1, 2014, that matter would have been between Shin and Sony. (*See* Contract 3, § 2, A-73.) Majic was excised from the Delivery process via Contract 3, after a dispute arose over his non-payment of royalties to Shin, as discussed above.[16]

In support of his argument that the District Court improperly limited Majic's breach of contract claim to pre-2014 Deliveries, Majic argues that the District Court conflated Shin's obligation to Deliver songs with a supposed additional obligation to transfer a copyright interest in those songs, when the latter obligation is merely part of the former obligation. (*See* Opening Br., pp. 34-35.) In other words, Majic argues that Shin has one obligation to deliver songs to Sony *and* a separate obligation to convey copyright interests in those songs to Majic,[17] as if

---

[16] As the District Court states: "Indeed, the apparent purpose of Contract 3 is to excise Majic from the composition delivery process." (SPA-19.)

[17] Notably, Majic cannot even identify which Composition copyrights he believes he has been deprived of. Indeed, Majic testified that he cannot identify any Compositions that were not delivered prior to January 1, 2014, other than the 14 identified by Shin that were in fact delivered to Sony, as acknowledged by Majic. (*See* A-911:1-6 (Catala Dep.) (acknowledging delivery of certain identified songs).) Nevertheless, Majic insists that "upwards to a couple hundred [Compositions] that I

those were two distinct obligations. However, Shin's "Delivery" Obligation in Contract 1 specifically includes – and is not distinct from – his obligation to transfer copyrights. Indeed, Contract 1, § 12(c), defines "Delivery" as including the delivery of "[e]xecuted assignments of copyright and authorizations" and "[a]ll existing copyright registrations, if any." (Contract 1, §12(c), A-41–42.)

Moreover, the provisions defining "Delivery" in Contract 1 and Contract 2 each require that Shin deliver and assign copyrights in Compositions to the publisher. (Contract 1, §12(c), A-41–42; Contract 2, §11(b), A-62.) Logically, if there were, *arguendo,* a failure of delivery of a Composition, that would constitute a failure to deliver the copyright interest in that Composition. Thus, Majic's alleged deprivation of a

---

have not received a penny on" are "out there." (*Id.*) Majic admits that his claim is based on pure speculation in this interchange:

> Q. Are you contending that the 150 songs that you included as an exhibit, I, to your complaint are different songs than the ones that you reference in your Interrogatory Number 2 response?
> A. I am stating that there's over 150 songs that I believe that should fall under Contract 1, that are out there, that I'm not being paid on. And those songs are not part of an exhibit, because they might be songs that I haven't even discovered yet.

(A-910:11-22 (Catala Dep.); *see also* A-784–786, A-911–912.)

copyright would simply be an element of damages from the alleged non-delivery, not a separate breach.

Majic next attempts to split a single cause of action for breach of contract (alleged failure of "Delivery") into multiple causes of action involving an alleged breach related somehow to the US Copyright Act, which is irrelevant here.[18]

The Delivery obligation, pursuant to Contracts 1, 2 and 3, includes a transfer of copyright ownership as part of the Delivery process. Yet Majic argues under copyright law, that ownership in copyright "is a separate and distinct legal concept from the delivery of the copyrighted material itself." (Opening Br., p. 37.) It may be a separate concept, but it is part of the same Delivery obligation, as discussed *supra*.

Moreover, Majic fails and refuses to acknowledge that, Contracts 2 and 3 unequivocally removed from Majic and placed with Sony any authority to accept or deny Delivery. (Contract 2, §11(b), A-62, and §5,

---

[18] The Complaint contains no copyright infringement dispute under the U.S. Copyright Act of 1976. Instead, it merely alleges a breach of contract claim between alleged co-owners. *See Weissmann v. Freeman*, 868 F.2d 1313, 1318 (2d Cir. 1989) ("[A]n action for infringement between joint owners will not lie because an individual cannot infringe his own copyright.")

A-54-55; Contract 3, §2, A-73.)  Majic's copyright claim was correctly dismissed in the MTD order, and he does not appeal it here.  In any event, Majic hardly contends that he is a copyright creator like Shin, only that he obtained half of Shin's copyrights through contracts the parties entered into.

In sum, since Contract 3 excised Majic from the Delivery process as of January 1, 2014, the District Court properly limited his claim to Deliveries prior thereto.  Accordingly, the District Court's MTD ruling should be affirmed.

### B. The District Court properly granted Shin's Motion for Summary Judgment, dismissing Majic's remaining claim for breach of contract against him.[19]

Majic argues that the District Court's order granting Shin's cross-motion for summary judgment is subject to reversal on both procedural and substantive grounds.  For reasons set forth below, Majic is incorrect, and the District Court's Order on Shin's and Majic's cross-motions for summary judgment should be affirmed.

---

[19] Notably, Majic appeals the granting of Shin's summary judgment motion but does not challenge the denial of his own crossing summary judgment motion.  (*See* Opening Br.)

24

### i.    Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir.2002).

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).  Where, however, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a dispute or issue of fact is genuine for summary judgment purposes. *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (2017)).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Nick's Garage, Inc.*, 875 F.3d at 113–14 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The showing necessary to satisfy this initial burden varies depending on

whether the movant would bear the burden of proof as to the particular issue at trial.

When the burden of proof at trial would fall on the nonmoving party, the movant generally may satisfy its burden by either (1) pointing to the absence of evidence on an essential element of the nonmovant's claim, *Simsbury-Avon Preservation Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322–23), or (2) submitting evidence that "negates an essential element of the non-moving party's claim." *Nick's Garage, Inc.*, 875 F.3d at 114 (quoting *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988)). In either event, the party resisting summary judgment may not rely on mere conclusory allegations or denials, such as those in the pleadings, or on unsubstantiated speculation. *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)) (internal quotation marks omitted).

The "district courts need only consider admissible evidence in ruling on a motion for summary judgment." *I.M. v. United States*, 362 F. Supp. 3d 161, 174, n.9 (S.D.N.Y. 2019) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)).

### ii. The District Court followed proper procedure in analyzing both Majic's and Shin's crossing MSJs.

Majic argues that the District Court's order granting Shin's cross-motion for summary judgment should be reversed on the procedural ground that the District Court failed to resolve all ambiguities and draw all reasonable inferences in his favor when analyzing his motion for summary judgment. Moreover, Majic argues that the District Court failed to place the burden of Shin's motion on Shin, and instead put the initial burden on Majic. (Opening Br. p. 22.) This argument fundamentally misreads and misconstrues the District Court's decision in granting Shin's MSJ. Indeed, the District Court properly analyzed both Majic's motion for summary judgment, which it denied, and Shin's cross-motion for summary judgment, which it granted. Accordingly, the District Court's order should be affirmed.

As set forth above, a moving party who will not ultimately bear the burden of proof at trial can satisfy its burden on a motion for summary

27

judgment by pointing to the absence of evidence on an essential element of the nonmovant's claim. *Simsbury-Avon Preservation Club, Inc.*, 575 F.3d at 204 (citing *Celotex Corp.*, 477 U.S. at 322–23). When that burden has been met, the nonmovant must then produce or point to evidence in the record, which is not conclusory or speculative, but sufficient to demonstrate the existence of a genuine issue of fact requiring trial. *Fujitsu Ltd.*, 247 F.3d at 428; *see Celotex Corp.*, 477 U.S. at 324. The District Court found that Shin met his burden by demonstrating that there is no evidence sufficient to support the breach element of Majic's breach of contract claim. (SPA-78-79.)

The burden then properly shifted to Majic to produce or point to nonconclusory and nonspeculative evidence sufficient to demonstrate a genuine issue of fact as to the element of breach. Each instance in which Majic argues the Court failed to put the burden on Shin is, in fact, an instance in which the Court properly shifted the burden to Majic after Shin met his burden, and Majic subsequently failed to meet his burden. Majic simply presents no material fact to raise a genuine issue as to any specific Composition that Shin failed to Deliver during the 15-month period prior to 2014, or at any other time.

28

Majic points to nine instances in which he says the District Court inappropriately drew inferences in Shin's favor on Shin's MSJ.[20] (Opening Br. p. 23-24.) For example, with respect to Majic's allegation that Shin did not Deliver the percentage interests that resulted from his individual authorship or ownership of certain Compositions, the District Court held that "Plaintiff has not proffered evidence concerning these allegations sufficient to create a material issue of fact as to whether Shin breached his obligations under Contract 1." (SPA-78.) Here the District Court properly shifted the burden onto Plaintiff to proffer evidence sufficient to create a material issue of fact, following the rule of *Celotex*, discussed *supra*. Moreover, this burden of presenting a genuine issue of material fact could *only* be placed on Majic, because, as Shin's MSJ argues, there are *no* genuine issues of material fact.

Likewise, other instances that Majic cites for his mistaken argument that the District Court improperly placed the burden on him when analyzing Shin's MSJ include holdings by the District Court that:

---

[20] Majic claims there were 15 such instances but only identifies nine. (Opening Br. p. 23-24.)

29

- "[T]here is a complete failure of proof as to Plaintiff's claim that Shin and his Affiliates 'didn't deliver the accurate amount of ownership of a song,'" (SPA-79)

- "Plaintiff has not offered evidence that (1) Shin or any Joombas entity had 'authorship and/or ownership rights' in these compositions as of the registration dates shown, or (2) what percentage interest Shin or any Joombas entity had that resulted from those 'authorship and/or ownership rights,'" (SPA-80)

- "Plaintiff also cites to deposition testimony taken during discovery, but none of this testimony demonstrates that Shin or his Affiliates failed to deliver any interest in any composition as was required under Contract 1," (SPA-81) and

- "None of these exhibits shows an interest held by Shin or a Shin Affiliate in any composition that Defendant was required to – but did not – deliver to Majic or Sony under Contract 1, however." (SPA-80.)

In each of these instances, the District Court correctly determined, there is simply no evidence in the record to support an essential element of Majic's claim for breach of contract, namely the breach itself.

To the extent Majic attempted to uphold his burden to submit evidence demonstrating a material issue of fact, such evidence was speculative or conclusory, which, as discussed above, is insufficient to defeat Shin's MSJ. *Fujitsu Ltd.*, 247 F.3d at 428; (*see* also Order on MSJ, SPA-79 ("[a]ll of Catala's testimony about Shin's alleged breach is entirely speculative,"); SPA-82 ("Plaintiff further cites his own testimony in which he claims – in a speculative and conclusory manner – that 'Shin fraudulently placed music compositions in other people's names'").) As the United States Supreme Court held in *Celotex*:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential

element of [its] case with respect to which [it] has the
burden of proof.

*Celotex Corp.*, 477 U.S. at 322-323.

Because Majic failed to carry his burden on Shin's MSJ, there is
demonstrably no genuine issue of material fact for trial. All other facts
are, therefore, necessarily irrelevant because Majic cannot prevail on his
claim for breach of contract. Accordingly, the District Court properly
determined that Shin is entitled to judgment as a matter of law, and its
Order granting Shin's MSJ should be affirmed.

### iii. Majic has not, and cannot, show that the District Court's order granting Shin's MSJ should be reversed on substantive ground.

Shin argued below that he is entitled to summary judgment on
Majic's claim for breach of contract because Majic could not prove that
Shin breached his obligation to Deliver to Majic Compositions released
before January 1, 2014, pursuant to Contract 1. To analyze Shin's
motion, the District Court focused on two disputed issues: 1) whether
Majic could prove that the Joombas entities named in the Complaint
were Shin's "Affiliates" within the meaning of Contract 1,[21] and

---

[21] A determination of this issue was necessary because if the Joombas
entities were found to be Shin's Affiliates, then to comply with his

2) whether Majic could prove that Shin "fraudulently minimized" his percentage interest in Compositions to decrease royalty payments to Majic, thereby depriving Majic of his rights under Contract 1. (SPA-74-82.) The District Court found that Majic could not prove either one of these issues and, therefore, granted Shin's cross-motion. On appeal, Majic fails to demonstrate that the District Court's MSJ Order should be disturbed.

### 1. Majic still has not presented a genuine issue of material fact as to whether the Joombas entities were Shin's "Affiliates."

On Appeal, Majic persists in his attempt to use Shin's business relationships with some Joombas entity(ies) as a basis for concluding that Majic is entitled to own those entities' catalogs of songs. As the District Court held, however, Majic has not "demonstrated as a matter of law that any Joombas entity other than Joombas Music Group employs Shin, or that Shin controls any Joombas entity" (SPA-77) such that he breached Contract 1 by failing to Deliver any portion of any Composition(s) he did not personally own to Majic or Sony. (SPA-77-80.)

_____

Delivery obligation under Contract 1, Shin would have also been required to Deliver all Compositions the Joombas entities acquired on or before December 31, 2013.

33

On appeal, Majic argues that the District Court erred in determining that Joombas is not Shin's Affiliate because:

> The District Court itself found in the MTD opinion that Shin was the CEO of Joombas, and Shin himself admitted to that fact. SPA-76, A-330: 12-13…If Shin was the CEO of Joombas, it necessarily follows that Joombas employed Shin. That fact alone makes Joombas an "Affiliate" of Shin under Contract 1.

(Opening Br., p. 27.)

Majic's theory appears to be based on the groundless notion that any intellectual property that happens to be owned by any company with which Shin has a business relationship is automatically transferred to Majic, regardless of whether Shin controlled the operation of such entity. Majic's expansive interpretation of the term "Affiliate" plainly ignores the limited definition set forth in Section 12(e) of Contract 1. (A-42.) Majic also fails to identify which Joombas entity he refers to and which Compositions he claims were not delivered to him. Such vague and conclusory allegations cannot support Appellant's summary judgment motion and do not raise a genuine issue of material fact to oppose Appellees' summary judgment motion. *See Fujitsu Ltd.*, 247 F.3d at 428.

Majic cites several excerpts from Shin's deposition testimony to support his unfounded claim that Joombas and Shin were hiding

34

Compositions from him. However, none of these "sound bites" establish that Joombas had authorship and/or ownership rights in any Compositions. Instead, the testimony excerpts simply describe Shin's role at Joombas. (*See* A-330:12-13, A-353:5-8, and 366:2—367:8 (Shin Dep.).) They certainly do not establish what percentage interest, if any, Shin or any Joombas entity would have, in any such Compositions, or what percentage interest, if any, Majic would be owed. Such evidence simply does not raise a material issue of fact warranting the reversal of the District Court's order granting Shin's motion for summary judgment. *See Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir.1998); *see also Celotex Corp.*, 477 U.S. at 322; *Liberty Lobby*, 477 U.S. at 249–50 ("If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted") (internal citations omitted).

Accordingly, this Court should affirm the District Court's rulings with respect to the Joombas defendants.

## 2. Majic still fails to raise an issue of material fact regarding Shin's alleged minimization of his percentage interests in Compositions

Majic argued before the District Court and argues again here that although Shin may have delivered the Compositions he was required to, he didn't deliver his entire interest in them. The District Court correctly rejected this argument because Majic failed to present evidence which supports it, and this Court should reach the same conclusion.

As a preliminary matter, this argument fails because it assumes that Joombas is Shin's Affiliate within the meaning ascribed by Contract 1, which, as discussed above, is incorrect. Accordingly, even if Joombas had ownership interests in Compositions, Shin was not required to Deliver those interests to Majic or Sony under any contract. As a result, Majic's entire argument under copyright law that Joombas held ownership rights in certain Composition falls like a house of cards. (*See* Opening Br., pp. 30-32.)

Moreover, Majic's argument that Shin somehow breached his contractual obligations by reducing his ownership interest in Compositions he was obligated to Deliver fails because any claim relating

to Shin's percentages of authorship or ownership in a Composition belongs to Sony following the execution of Contract 2, not Majic.

Majic has argued, as quoted by the District Court, "[i]t's not that [Shin] didn't deliver [the songs], he didn't place them in his name, so that - so it's not that he didn't deliver. It's that he fraudulently put a different name on the song. The songs were delivered, but they were delivered in someone else's name." (SPA-63.) In other words, Majic's argument has nothing to do with whether Shin Delivered Compositions, but instead relates to the alleged shifting of authorship percentages in Compositions as between Shin and others listed as songwriters thereon.

Contracts 1 and 2 address the obligation of the songwriter to deliver their interest in subject Compositions to the Publisher.[22] In order to incentivize the songwriter to deliver more fractional shares of songs to the publisher, a minimum delivery and release commitment is contained in both Contract 1 and 2. (A-37, A-53.) Neither contract specifically

---

[22] Contract 1 states, in pertinent part: "'Your Interest' in a Composition shall mean that percentage interest in a Composition resulting from your authorship and/or ownership of rights in that Composition. You shall Deliver to Publisher Your Interest in each Composition promptly following creation." (Contract 1, § 3, A-37.) Substantially similar language is contained in Contract 2, § 3(b)(i) (A-53).

37

prohibits a songwriter from determining the so-called "song split" (i.e. division of ownership and authorship) as to any Composition, which is commonly divided among parties at the conclusion of the creation of a song.[23]

When Contract 2 was executed on May 1, 2009, Majic assigned to Sony the "sole and exclusive right" to administer the publishing agreement and all Compositions thereunder. (Contract 2, §5(b), A-54.) As a result, if any dispute arose as to percentages of authorship or ownership in a Composition after May 1, 2009, such dispute was between Shin and Sony, and any such dispute would have been resolved and released pursuant to the 2018 Settlement Agreement. (*See* A-178–187.)

### 3. The District Court properly determined that Majic failed to show Shin breached Section 9(b) or Section l4(c) of Contract 1.

Majic also argues on appeal that the District Court's order granting Shin's cross-motion for summary judgment should be reversed because, therein, the District Court "erred by failing to analyze and determine

---

[23] Such song splits are not "assignments" of song interests to third parties (e.g. music publishers), which logically can only happen after the original song split is determined, but a division of property at the inception.

whether Shin's competition with Majic through Joombas breached Contract 1, §§ 9(b) and 14(c)." (Opening Br., p. 18.) In its order on the motions for summary judgment, however, the District Court considered Majic's claim that Shin and/or Joombas breached Contract 1, Sections 9(b) and 14(c), and properly found that Majic failed to demonstrate any such breach. Accordingly, Majic's argument on appeal, has no merit.

### a. Alleged breaches of Section 9(b).

In Section 9(b) of Contract 1 Shin represents and warrants that he "will not perform or render any services for the purposes of writing musical compositions either directly or indirectly for any person or entity other than Publisher and ... will not enter into [any] agreement with respect to any Compositions[] or rights with respect thereto." (Contract 1, § 9(b), A-40-41; *see* SPA-55.)

Majic argues that "[t]hrough Joombas, Shin signed publishing deals with a large number of writers of musical Compositions…" (Opening Br., p. 19 (citing testimony at A-515:15-516:9, A-551:11-553:12, A-368:24-369:1, and A-375-382).)

In his MSJ Ruling, Judge Gardephe analyzed the evidence presented by Majic, and found that no genuine issue of material fact

existed with respect to whether Joombas owned Compositions on which Shin owed any obligation to Majic because Majic failed to connect the dots between any particular Joombas entity and any specific interest in any particular Composition. Specifically, the Trial Court stated:

> Although some shares of some compositions are credited to songwriters for whom 'Joombas publish[ed] and administer[ed] the publishing,' and who were 'sign[ed] . .. to Joombas Publishing' generally (see, e.g., Shin Dep. (Dkt. No. 146-1) at 73, 85, 90, 93-94, 96-97), Plaintiff has not offered evidence that (1) Shin or any Joombas entity had "authorship and/or ownership rights" in these compositions as of the registration dates shown, or (2) what percentage interest Shin or any Joombas entity had that resulted from those 'authorship and/or ownership rights.' Accordingly, Plaintiff has not shown that he is entitled to any of these 'shares.' And even if Plaintiff had made such a showing, Plaintiff has not shown (1) what percentage interest he is owed or (2) that this interest was not delivered under Contract 1.

(SPA-80–81.)

On appeal, Majic cites to deposition testimony he says evidences breaches of §§9(b) and 14(c). But Deponent Ross Lara, a songwriter, describes an agreement he entered into with an unidentified Joombas entity more than six years prior to Majic's filing of the Complaint. (A-515:15–516:9, A-551:11-553:12.) Lara's testimony only indicates that Shin was instrumental in signing Lara to a contract with one or another

40

Joombas entity, and that Shin was acting as an executive thereof. But Majic fails to show how Shin's acting as an executive of any entity, even if it is a music publishing company in competition with Majic or Sony, is in violation of Contract 1 or 2. Nor does Majic explain how Shin's signing of Ross Lara or (any other songwriter to a Joombas entity) breaches Contract 1 or 2, neither of which exclusively binds Shin as a music executive. They only pertain to his songwriting activity.

Nevertheless, in a vain attempt to impute Shin's obligations to Joombas, Majic argues that any third-party company that Shin works for is an "affiliate"[24] of Shin's, as defined in Contract 1 and Contract 2, such that it must turn over all of its copyrights to Majic simply because Shin worked there. (*See* Opening Br. p 27.)

---

[24] A music publishing "affiliate" is a term of art in the music publishing business that refers to a business entity – typically a d/b/a of the individual – that a songwriter must form to receive payment of any retained publisher's share of income from royalty collection societies such as ASCAP or BMI, which usually pay the publisher's share of income to such an "affiliate" of the songwriter rather than to the songwriter themself. *See* footnote 3 *supra*. Since Shin retained half of his copyright in Contract 1, and thus the right to receive 50% of the publisher's share of song income, he was required to, and did, form a music publishing "affiliate."

41

However, Majic fails to show – and cannot show – how Shin's activity as an executive of a music company gives rise to any cause of action in the Complaint. Majic confuses Shin's activity as a songwriter with his activity as an executive.[25]

Finally, Majic argues that Shin's effective performance in his role as an executive of a publishing company by signing songwriters somehow supports the argument that Joombas is an affiliate of Shin's. (Opening Br., pp. 19-20 (citing A-375-382).) For the same reasons discussed above, Shin's employment with a company does not impute his individual obligations to the company, no matter how good he is at his job. Moreover, the writer mentioned in the specific deposition testimony Majic cites to support this argument, Davey Nate (a/k/a Nate Davey, Nathan David, and David Nathan) was signed to a Joombas entity long after January 1, 2014 (A-894:8-14), the cutoff date established by the

---

[25] Apparently in support of this argument, Majic cites an excerpt from Shin's deposition in which Shin acknowledges that the CEO of a Joombas entity named Hyeong–Kyu Kim, also known as Daniel Kim or "DK," signed a music publishing administration agreement with a Joombas company. (Opening Br., p. 10 (citing A-368:24-369:1).) Majic fails to explain how this supports his argument or why Mr. Kim's signing of a music publishing agreement with a Joombas entity would be actionable.

42

District Court in the MSJ ruling (SPA-60) and in the MTD ruling (SPA-16.)  Again, even if this songwriter signed with a Joombas entity prior to January 1, 2014 – and no evidence presented shows that he did – Majic fails to show any cognizable cause of action against Shin with respect thereto.  Majic fails to show how Shin signing any songwriter to any company whatsoever is a breach of Contract 1 or 2.

### b. Section 14(c).

Majic asserts that Shin breached §14(c) of Contract 1 for the first time on appeal.  The argument should be disregarded on this basis alone. *See Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 Fed. Appx. 39, 40 (2d Cir. 2014) (holding that plaintiff waived arguments by failing to raise them in opposition to defendants' motion for summary judgment) (citing *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004)).  Nevertheless, without waiving objection, Appellee addresses this argument.

Section 14(c) of Contract 1 states, in pertinent part: "You may not assign this Agreement, or any of your rights hereunder, or any of your rights or interests with respect to the Compositions, without the prior written consent of Publisher."  (A-43.)

Even if Majic showed evidence of such an assignment, which he has not, Majic would not have had a right to block that assignment under Section 14(c), because any such blocking rights that Majic may have had under Contract 1 were passed along exclusively to Sony under Contract 2, which Majic signed one month after Contract 1 was executed.

As the District Court found, Majic failed to present evidence to support his allegation that Shin breached any obligation whatsoever to Majic. (SPA-79–84.) Shin delivered songs to Sony, as he was required to do, and Sony has regularly accounted and paid Majic his share, as he admits in his deposition. (A-753:5-24.)

In sum, Judge Gardephe thoughtfully analyzed Contracts 1-3 and found that Majic failed to show any breach or raise any genuine issue of material fact with respect to any cause of action in the Complaint.

### C. Majic waived opportunities to amend the Complaint and should not receive yet another opportunity at this late stage.

Appellant argues that he should be permitted leave to amend the Complaint now because the Trial Court denied him the opportunity, which is false. Rather, Judge Gardephe considered numerous procedurally incorrect attempts by Appellant to amend the Complaint

and determined that amendment would be futile. Nonetheless, Magistrate Judge Gorenstein subsequently gave Appellant another opportunity to file a motion for leave to amend at the close of discovery, but Appellant never did. Accordingly, a finding that the Trial Court abused its discretion in denying Appellant's motion for leave to amend would be inappropriate and extremely prejudicial to Appellant.

The Court should "review the denial of leave to amend a complaint for abuse of discretion." *State Farm Ins. Co. v. Kop-Coat, Inc.*, 183 Fed. Appx. 36, 37 (2d Cir. 2006). The "district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* at 37-38 (finding no abuse of discretion where "Appellants' own filings ma[d]e it difficult for [the court] to comprehend why [appellants] did not file their motion to amend sooner").

In other words, a "counseled plaintiff is not necessarily entitled to a remand for repleading whenever he has indicated a desire to amend his complaint..." *Porat v. Lincoln Towers Community Association*, 464 F.3d 274, 276 (2d Cir. 2006) (affirming dismissal, declining remand for repleading, and finding no abuse of discretion by the district court where

45

plaintiff's counsel never actually moved for leave to amend his complaint and counsel did not advise the district court how the complaint's defects would be cured).  Thus, where, as here, permitting leave to amend would cause significant hardship and prejudice to Appellees, a request for remand and leave to amend should be denied.  *State Farm Ins. Co.*, 183 Fed. Appx. at 38 (no abuse of discretion to deny leave to amend where appellants had "numerous opportunities" to amend their complaint to state a misbranding claim under the FHSA, "but inexplicably failed to do so"); *see also Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000) (internal citations omitted) (no abuse of discretion to deny leave to amend "after an inordinate delay [in moving for leave to amend], no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery").

Permitting Appellant leave to amend the Complaint at this stage of the litigation, after Majic declined the opportunity to do so prior to the close of discovery (without explanation), would cause undue hardship and prejudice to Appellees.  The procedural history of Appellant's attempts to amend the Complaint, which are omitted by Appellant in his Opening

46

Brief and from Appellant's Appendix, is informative as it demonstrates that the District Court, rather than abuse its discretion, provided Appellant ample opportunity to amend the Complaint.

To recap the relevant history in more detail, Appellant first sought to amend his Complaint in December of 2018, in a procedurally improper manner, by requesting leave in his brief in opposition to Shin's motion to dismiss. At that time, Appellant sought to add allegations of fraud against Shin relating to the negotiation of Contract 3. (SPA-27, fn. 14.) The Trial Court rejected this argument, noting that the allegations of fraud were not set forth in the Complaint, and a complaint cannot "be amended by the briefs in opposition to a motion to dismiss." (SPA-27, fn. 14 (citations and quotations omitted).)

Then, in October of 2019, when Appellant made a motion for reconsideration of the Trial Court's Order on Defendants-Appellees' motions to dismiss, Majic tacked on a motion for leave to amend the Complaint without seeking leave of the Trial Court. (*See* A-221-225.) Such a motion requires a pre-motion letter, pursuant to the Trial Court's Individual Rules of Practice, yet Majic failed to send such a letter to the Court. Indeed, in its May 20, 2021, Order denying Appellant's motion for

reconsideration and for leave to amend, the District Court noted that Appellant's filing of the motion to amend without submitting a pre-motion letter was alone sufficient grounds for denial of the motion. (SPA-41, fn. 4.) Nevertheless, the District Court still considered and denied the motion on its merits, finding Appellant's proposed claims for fraud in the inducement against Shin and for tortious interference against the Joombas Entities futile. (SPA-41-47.)

Less than six months later, on October 22, 2021, Appellant filed another letter requesting a pre-motion conference for the purpose of seeking leave to file a proposed amended complaint, (SA-5-8), which Appellant attached as an exhibit to the letter. (A-270-284.) Notably, this was the first proposed amended complaint draft that Appellant submitted to the District Court, and the document Appellant now cites in support of his argument that his proposed claims are meritorious. (*See* Opening Br., pp. 41-42.)

Magistrate Judge Gorenstein, who was appointed to adjudicate general pretrial matters on the case, (SA-13), adjudicated Majic's motion for leave to amend. While noting the "imminent discovery cutoff," "lateness of the application," and "lack of an[y] competent proof that

supports the explanation for delay," Magistrate Judge Gorenstein waived the pre-motion conference requirement and permitted plaintiff the opportunity to file a motion for leave to amend the Complaint on or before December 3, 2021. (SA-14.)

Nevertheless, Appellant never filed another motion for leave to amend. (*See* A-1-24 (District Court Docket Entries).)

Accordingly, the Court should reject Appellant's request for remand to file an amended complaint, or what would effectively be a fourth bite at the apple, as it is untimely, futile, prejudicial to Appellees years after the close of discovery, and would excuse, or even reward, Majic's neglect and failure to comply with the District Court's rules.

## IV.  CONCLUSION

For the foregoing reasons, the District Court's orders granting Shin's MTD and MSJ should be affirmed.

Dated:  May 28, 2024
New York, New York

Respectfully submitted,

*/s/ William I. Hochberg*
William I. Hochberg
Raines Feldman Littrell LLP
1900 Avenue of the Stars
19th Floor
Los Angeles, CA 90067
(310) 440-4100
whochberg@raineslaw.com

Rebecca Avrutin Foley
Raines Feldman Littrell LLP
1350 Avenue of the Americas,
22nd Floor
New York, New York 10019
(917) 790-7100
rafoley@raineslaw.com

50

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

This document complies with the type-volume limit of Fed. R. App.

P. 32(a)(7)(B) because, excluding the parts of the document exempted by

Fed. R. App. P. 32(f), this document contains 9,872 words.


Dated:      May 28, 2024
            New York, New York


                              Respectfully submitted,

                              _/s/ William I. Hochberg_
                              William I. Hochberg
                              Raines Feldman Littrell LLP
                              1900 Avenue of the Stars
                              19th Floor
                              Los Angeles, CA 90067
                              (310) 440-4100
                              whochberg@raineslaw.com